**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAMILLE SCHMIDT,<br><br>        Plaintiff,<br><br>    v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, INC., and DOES 1 through 50,<br><br>        Defendants. | Case No. 1:23-cv-00052-JLT-EPG<br><br>ORDER DENYING MOTION TO REMAND<br><br>(Doc. 5) |

**INTRODUCTION**

This is an insurance case brought by Plaintiff Camille Schmidt, who alleges that Defendant State Farm General Insurance Company underpaid on a claim she filed after her home suffered water damage from a broken pipe. (*See generally* Doc. 1-1.) On January 11, 2023, asserting diversity jurisdiction under 28 U.S.C. § 1332, Defendant removed the action to this Court from the Superior Court for the County of Fresno. (Doc. 1) On January 26, 2023, Plaintiff moved to remand, arguing that Defendant has not met its burden to demonstrate that the amount in controversy exceeds $75,000. (Doc. 5.) Defendant opposes the motion (Doc. 6), and Plaintiff replied. (Doc. 8.) The matter was taken under submission on the papers pursuant to this Court's standing order (Doc. 9) and Local Rule 230(g). After a review of the record, the Court concludes that State Farm has met its burden to establish removal jurisdiction and therefore the motion is

1

**DENIED**.

## BACKGROUND

According to the complaint, Plaintiff's home, which was covered by an insurance policy (the "Policy") issued by Defendant, "was severely damaged by a water intrusion" in mid-February 2022. (Doc. 1-1, ¶ 1.) Plaintiff generally alleges that Defendant refused to honor the Policy's coverage as follows:

> State Farm delayed repairs to the residence and refused to honor the policy's coverage for loss of use, forcing [Plaintiff] and her family of five to live in an unsafe construction zone for more than half a year, despite knowing that by doing so, it was placing [Plaintiff]'s physical and mental health at serious risk. State Farm closed the claim before the home was restored, without paying the policy's full loss-of-use benefits and after causing [Plaintiff]'s health to decline.

(*Id*.) More specifically, Plaintiff alleges that for approximately two weeks, State Farm "forced [her] and her family to live in a moldy house while major demolition began" on the home. (*Id*., ¶ 13.) When State Farm later provided the family lodging in a local hotel, it was "in a one-bedroom room with one bed for the family of five people plus a dog," and "State Farm paid for the room for only five days, during the bulk of the demolition, and then sent the family back to their still uninhabitable home, which was in shambles." (*Id*., ¶ 14.)

Over the subsequent two months (March and April 2022), "State Farm delayed approval of the promised remediation, all the while forcing [Plaintiff] and her family to remain in their home." (*Id*., ¶ 15.) Plaintiff "informed State Farm repeatedly that the home was uninhabitable and unsafe" and informed them that:

> she suffered from diagnosed PTSD, anxiety, fibromyalgia, chronic sinusitis, chronic allergies, ventricular premature beats, nonalcoholic fatty liver disease and had a family history of autoimmune disease (lupus, mixed connective tissue disease). [Plaintiff] told State Farm repeatedly that remaining in the house was worsening her medical conditions.

(*Id*., ¶ 16.) The complaint alleges that "State Farm thus knew that it was inflicting physical and mental harm on [Plaintiff] by forcing her and her family to remain in their home under unsafe circumstances, in violation of the Policy's promised [ ] coverage." (*Id*., ¶ 17.)

By mid-May 2022, "State Farm had sent three different vendors to remediate the damage but the home "still had not been restored or made habitable." (*Id*., ¶ 18.) When, in July 2022, replumbing of the bathroom and rebuilding of the walls of the damaged rooms commenced, "[Plaintiff] and her family were forced to breathe in the insulation particles, dry wall dust and paint fumes for days during this process—and to endure the noise and chaos in their home." (*Id*., ¶ 19.) By mid-August 2022, the work was still not completed. ((*Id*., ¶ 20.)

Plaintiff was then "diagnosed with autoimmune hepatitis and forced to take disability leave from her work." (*Id*., ¶ 21.) Plaintiff alleges the condition was brought about by "the stress inflicted [ ] by State Farm in forcing her and her family to endure hazardous living conditions." (*Id*.) On September 25, 2022, State Farm closed [the] claim, even though, according to Plaintiff, the kitchen had not been restored, and State Farm had not compensated Plaintiff for alternative living arrangements. (*Id*., ¶ 22.) In sum, the complaint alleges that:

> Having been first traumatized by the flooding of her home, [Plaintiff] was then made to endure the next seven months in a state of constant stress while battling State Farm to honor the Policy's coverage and to provide safe alternative living accommodations for her and her family. She has been underpaid on her claim, she has suffered frustration, anger, anxiety, humiliation and anguish, and she now faces new and exacerbated medical issues.

(*Id*., ¶ 23.)

## DISCUSSION

### A. Legal Standards

Removal is governed by 28 U.S.C. § 1441, which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. Other than for cases brought under the Class Action Fairness Act of 2005 (CAFA), courts in the Ninth Circuit "strictly construe the removal statute against removal jurisdiction." *Acad. of Country Music v. Cont'l Cas. Co*., 991 F.3d 1059, 1068 (9th Cir. 2021). A plaintiff may challenge removal by timely filing a motion to remand. 28 U.S.C. § 1447(c).

The district court has original diversity jurisdiction when all parties are diverse and the

3

amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a); *see also Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted). Plaintiff does not dispute that there is complete diversity of citizenship between the parties and does not suggest removal was untimely. (*See generally* Doc. 5.) Thus, the only issue is whether the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1).

A notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). The amount in controversy is calculated based upon "the complaint operative at the time of removal and encompasses all relief the court may grant on the complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005) ("the amount at stake in the underlying litigation . . . is the amount in controversy for purposes of diversity jurisdiction").

When, as here, a plaintiff does not identify a specific amount in controversy in the complaint, the removing party bears the burden to establish the amount in controversy at removal by a preponderance of the evidence. *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). In meeting the applicable burden, the removing party must provide evidence establishing it is more likely than not that the amount in controversy threshold is met. *Lenau v. Bank of Am., N.A.*, 131 F. Supp. 3d 1003, 1005 (E.D. Cal. 2015) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)). Once removal jurisdiction is contested, the court must provide the removing party a "fair opportunity to submit proof" as to jurisdiction. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1200 (9th Cir. 2015). The parties may submit evidence outside the complaint, including affidavits or declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.1997) (internal quotation marks omitted).

**B.     Analysis**

In the complaint, Plaintiff seeks: (a) contract damages, "including all amounts due under

1 the Policy and all foreseeable consequential damages"; (b) general and special damages for State

2 Farm's breach of the duty of good faith and fair dealing; (c) attorney fees incurred in recovering

3 amounts due under the Policy; (d) punitive damages; (e) pre-judgment and post-judgment

4 interest; and (f) costs of suit. (Doc. 1-1 at 7.) Because Plaintiff did not allege an exact dollar

5 amount of damages, State Farm must prove the amount in controversy exceeds $75,000 by a

6 preponderance of the evidence. *See Rodriguez*, 728 F.3d at 981.

7  In opposition to Plaintiff's motion to remand, State Farm provides a copy of the demand

8 letter Plaintiff sent to State Farm prior to commencement of this lawsuit, in which she demanded

9 without the assistance of counsel a payment in the amount of $843,000. (Doc. 6-1 at 4.) She broke

10 down that demand as follows:

11  Unpaid Additional Living Expenses per Loss of Use: $36,000

12  Unpaid Additional Living Expenses for Food Reimbursement: $12,000

13  Punitive Damages: $750,000

14  Unpaid Damages/Home Restoration: $45,000

15 (*Id.*)

16  A pre-litigation demand is relevant evidence of the damages sought. *See, e.g., Cohn v.

17 Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (holding that a demand "is relevant evidence of

18 the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim");

19 *Egal v. Geico Gen. Ins. Co.*, No. C14-1964RSM, 2015 WL 1632950, at *3-4 (W.D. Wash. Apr.

20 13, 2015) (considering plaintiff's demand letter when determining that the amount in controversy

21 was satisfied); *see also Flores v. Safeway, Inc.*, No. C19-0825JCC, 2019 WL 4849488, at *3

22 (W.D. Wash. Oct. 1, 2019) ("To establish the amount in controversy, a defendant may point to

23 many different types of evidence. . . . A particularly powerful form of evidence is the plaintiff's

24 own statements about the damages they seek."). A plaintiff's damage estimate "will not establish

25 the amount in controversy, however, if it appears to be only a 'bold optimistic prediction.'"

26 *Romsa v. Ikea U.S. West, Inc.*, No. CV14-05552 MMM (JEMx), 2014 WL 4273265, at *2 (C.D.

27 Cal. Aug. 28, 2014) (internal citation and quotation omitted). Moreover, where a plaintiff later

28 "attempt[s] to disavow his letter or offer[s] contrary evidence," the letter may lose its persuasive

5

value. *Cohn* 281 F.3d at 840; *Vitale v. Celadon Trucking Services, Inc.*, No. CV16-8535 PSG (GJSx), 2017 WL 626356, at *3 (C.D. Cal. Feb. 15, 2017) (collecting cases) ("[W]here a plaintiff takes steps to disavow a damages estimate, the estimate, standing alone, is insufficient to show that the requisite amount has been met."); *see also Graybill v. Khudaverdian*, No. SA CV15-01627 CJC (JCGx), 2015 WL 7295378, at *4 (C.D. Cal. Nov. 17, 2015) (granting a motion to remand under *Cohn* where a plaintiff's counsel "immediately disavowed the demand as a sort of pie-in-the-sky settlement wish and not a serious evaluation of the value of his claim")). Plaintiff correctly points out (*see* Doc. 8 at 2–4) that courts often examine the allegations of the complaint to determine whether the demand letter is a reasonable estimate of the plaintiff's damages or is, instead, "nothing more than posturing." *McIntyre v. US Airways*, No. CV 09-05256 MMM (FMOx), 2009 WL 10672577, at *3 (C.D. Cal. Nov. 12, 2009).

Having reviewed the entire record, the Court finds that the demand letter is not just posturing. The complaint at least arguably suggests that Plaintiff suffered some degree of loss of use for approximately eight months and that Defendant closed the claim before her kitchen was restored. Looking just at the compensatory damages demanded, though the demand for food reimbursement of $12,000 may be unreasonable, the other specific demand estimates ($36,000 for loss of use and $45,000 for unpaid home restoration expenses) do not seem outside the realm of reason.

Here, Plaintiff notes that she "penned her demand letter as a layperson unrepresented or advised by counsel" and asserts that the facts recited in her letter "provided no support for the dollar figures" demanded. (Doc. 8.)[1] But this is not a disavowal of these specific demands.

---

[1] At least one case mentioned in Plaintiff's opposition (*see* Doc. 8 at 3–4) questions whether settlement offers made early in the litigation should be considered as proof of the amount in controversy. *See* Kresge v. Jackson, No. 04–c–4073, 2004 WL 2657935, *2 (N.D. Ill. Oct. 15, 2004) ("We find that Defendants' reliance on a settlement offer made at the initial stages of the controversy, prior even to the filing of the state action, are misplaced. It is entirely plausible that Kresge did not have a firm grasp on the extent of his damages at that juncture. It is also entirely plausible that such a settlement demand might have been made at a much higher value than the actual amount in controversy as part of a bargaining strategy so that when counteroffers are presented and the parties negotiate a middle ground Kresge would stand in a better position.")). In that case, the district court appears to have been considering a bald pre-litigation demand to settle the dispute for $75,000, along with the unsupported suggestion by Defendants that the damages "may have accrued" thus making the amount in controversy more than $75,000. (*Id*.) Here, in contrast, the demand letter contains a breakdown of damages that, while not thoroughly explained, appears to be roughly reasonable in light of the allegations in the complaint.

Standing alone, not even considering attorney's fees, these two categories total $81,000, which exceeds the requisite amount in controversy. Accordingly, the Court finds that Defendant has met its burden to establish the amount in controversy by a preponderance of the evidence.

## CONCLUSION

For the reasons set forth above, the motion to remand (Doc. 5) is **DENIED**.

IT IS SO ORDERED.

Dated:   **September 30, 2023**

UNITED STATES DISTRICT JUDGE